JOURNAL ENTRY and OPINION
Defendant-appellant Leonardo Frazier appeals from his convictions and sentences for committing the following offenses: burglary, felonious assault, kidnapping, gross sexual imposition and intimidation.
Appellant contends his convictions are neither based on sufficient evidence nor sustained by the weight of the evidence. Appellant further contends the trial court erred both in failing to instruct the jury on lesser-included offenses of the felonious assault and kidnapping charges and in failing to consider that several of the charges were allied offenses of similar import.
After a thorough review of the record, this court finds no support for appellant's contentions. His convictions and sentences, therefore, are affirmed.
Appellant's convictions result from a series of events that took place during the Christmas holidays of 1998. At that time, the victim, sixteen-year-old Lafay Scott, was visiting her friend, Erica Reed, at Reed's new home in the upper portion of a house located at 9501 Parkview Avenue in Cleveland, Ohio.
Reed's portion of the home consisted of two bedrooms and a bathroom, a dining room, a kitchen with a stairway leading down to the rear of the house, and a living room with access to an outdoor porch. It, therefore, was large enough for her and her two children, one of whom was only six months old. However, the upper portion of the home had no heat. As an accommodation to Reed, the tenant of the lower portion of house, Christopher Scales, often admitted her to his area.
Scales, himself, did not live in the first-floor apartment but permitted appellant, his friend of seven years, to do so. Scales often was present on the premises.
On the night of December 23, 1998, Scott accompanied Reed to the lower portion of the home where a party seemed to be in progress. After singing along with Scales' "kareoke machine"[1] for some time, it was past midnight; therefore, Scott decided to follow Reed as she returned to her own apartment. Appellant stopped Scott as she was leaving, told [her] that [she] had a nice voice and that he liked [her] and [there] was an extra bed downstairs that [she] could sleep in. Scott declined the invitation, moved past appellant, and ascended the back stairway to Reed's apartment. Once there, she described the episode to Reed because it made Scott uncomfortable. Scott also later informed her boyfriend of the incident when he telephoned.
The following afternoon, on Christmas day, Reed entertained appellant, Scales and another young man, BJ, in her apartment. Appellant's chair was very close to Scott's as the five of them conversed in the dining room. While the others were speaking to each other, appellant turned to Scott and stated he wanted to pay [her] $15 to spend 30 minutes with him downstairs alone. Hoping to discourage appellant, she informed him that she was only sixteen and, further, that she was pregnant by her boyfriend. She then excused herself to go to the bathroom.
She found Reed there and told her friend of appellant's proposition. While the women were discussing the situation, appellant appeared in the doorway and began cussing at them because they were talking about him. Reed hotly told appellant to get out of [Scott's] face * * * She [didn't] want [him]. After arguing for a time, the two of them disengaged. Shortly thereafter, appellant and the others left to attend a birthday party for one of Scales' relatives.
The men returned late that same night. Reed descended the back stairway, spoke to appellant briefly about the party, then returned to her apartment. Believing that BJ would invite her out, and being undesirous of leaving Scott alone, Reed requested Scott to tell anyone who came to the door that Reed was not at home. Thus, Scott duly notified BJ of this when he called for Reed.
A few minutes later, appellant began banging on the back door and telling [Scott] that [she] was lying. The noise alerted Reed, who opened the door and proceeded downstairs to explain her actions to BJ. Upon her return, Reed was feeling unwell, so after making sure the apartment doors were locked, she took some medication and went to her bed. She placed her six-month-old son next to her before falling deeply asleep.
Scott elected to sleep on the living room couch with a blanket as a covering. At approximately 5:00 a.m. on December 26, 1998, the sound of someone walking around the apartment woke her. Although Scott checked on both Reed and Reed's older son, she could determine no reason for the noise. Therefore, she returned to the couch and went back to sleep.
However, only a short time later, Scott again awoke to see appellant, wearing only a cream color bathrobe, standing nearby. Appellant told Scott to get up because he wanted to talk to [her]. Scott answered that she desired to sleep, but appellant insisted, threatening that he would do something to [her] that he didn't want to do.
Scott complied. Appellant advanced toward her, chiding her for her actions toward him. Appellant then knelt down between [her] legs. He began telling [her] that he [would] kill [her] * * * And he [would] have people watching [her] and [she] could get killed when nobody know (sic) nothing about it.
Appellant emphasized his threats by brandishing a folding knife in his right hand. As he did so, he touched her thigh and attempted to touch her chest with his left hand. Scott tried to fend appellant off with the blanket; however, he persisted in reaching for her, lowering his hand to her stomach and her vaginal area.
Scott's reluctance irritated appellant. He waived the knife he held approximately six inches from Scott's face and changed his voice to sound more threatening. His demeanor added to Scott's fear; her pleas to understand why he was doing this increased in volume. At that point, Reed's baby began to cry.
Appellant did not want to be discovered. He left Scott and went into Reed's room. Observing a bottle on the night stand, he placed it in the baby's mouth. Although Reed had been asleep from the medication she had taken, she woke briefly to notice appellant's action before descending once again into a deep sleep.
Scott, in tears, remained on the couch. Upon appellant's return, he again ordered her to lay down. Before she could obey, however, Reed's baby resumed crying. Appellant ordered Scott not to tell anyone about his visit or whoever comes to him trying to check up on the incident would be hurt with an AK. Scott assumed that was a gun. Appellant further stated his gang don't (sic) play because they (sic) killers. Appellant then left out the back door.
Scott immediately ran to the door to secure the lock on it. Since the deadbolt lock was inoperable, she replaced the chain slide hanging from the door into the plate on the doorjamb. Scott then went to Reed's room, woke her, and told Reed that she wanted to go home. Scott was in tears and was reluctant to explain the reason for her distress except to say [appellant] said don't say nothing (sic)else. When Reed had coaxed the details of what had occurred from Scott, she, too, became afraid. Reed used her telephone to request a friend to summon the police.
Some Cleveland Police Department patrol vehicles arrived at the address shortly thereafter, at approximately 6:30 a.m. As his vehicle stopped, Guy Sako, one of the responding officers, observed two hysterical females * * * come running * * * down the steps of the front of the house carrying two babies. Both women were crying and yelling he is still in there.
Sako and his partner attempted to calm Reed and Scott in order to obtain some information about what had occurred. The officers then proceeded to Reed's apartment to determine whether the assailant was inside. When they were assured Reed's apartment was otherwise empty, they investigated the doors to discover the assailant's means of ingress. Both officers could see that one of the links on the kitchen door's chain lock was pried apart so that it easily could be disengaged from the links to which it was attached. The two ends of the broken-apart link looked shiny compared to the balance of the metal of the locking mechanism.
During their investigation, the officers could hear somebody moving around downstairs. Since the two women were very insistent that the assailant was in the house, the officers went to the doors of the downstairs units and repeatedly knocked. They received no response even after several minutes; therefore, they radioed for a supervisor.
Upon his arrival at the scene, the supervisor, Lt. Robert Nowakowski, similarly was unable to provoke a response from the resident of the downstairs unit. He therefore summoned the building's owner to bring a key to the apartment. By this method, the police officers eventually gained entry to the unit. The officers stepped through the door to see appellant seated on the living room couch with a beer can in his hand. Appellant was fully dressed.
The officers placed appellant under arrest. A pat-down search of him resulted in the discovery of a folding knife with a three inch blade in one of his right pants pockets. Although appellant had been informed of his rights, he inquired of the officers what it was all about. When informed that the 16 year old female * * * upstairs had accused him of performing a sex crime on her * * *, [appellant] stated [he] thought she was 19. He further stated if he had known, he wouldn't have been in there.
The arresting officers conveyed appellant to the police station. After he had been processed, he was permitted to make a telephone call. Lt. Nowakowski and some other officers had remained at the scene; at approximately 8:00 a.m., Reed`s telephone rang. Scott answered it. After only a few moments, her demeanor changed. She started crying, got kind of hysterical, and passed the receiver to Reed, stating, [I]t's him, it's him. Both women identified the voice on the telephone as appellant's; Scott indicated appellant had been asking her why did [she] get him sent to jail and reminding her he didn't do nothing (sic).
The following day, a detective investigating the case interviewed appellant. Although appellant did not wish to give a written statement, he admitted to the detective he had entered Reed's apartment and had seen Scott on the couch. He stated she sat up but said that her stomach was hurting, so he told her to lay down so that he could start rubbing her shoulders. Appellant admitted he gave a bottle to Reed's baby and further admitted that he knew Scott's age. He stated he refused to open the door of the downstairs unit to the police because he felt guilty.
Appellant subsequently was indicted on six counts, viz., (1) burglary, R.C. 2911.12; (2) felonious assault, R.C. 2903.11; (3) kidnapping, R.C. 2905.01, with a sexual motivation specification; (4) gross sexual imposition, R.C. 2907.05; and (5-6) two counts of intimidation,[2] R.C. 2921.04.
Appellant's case proceeded to a jury trial. The state presented the testimony of Scott, Reed, and some of the investigating police officers. The state also introduced into evidence the folding knife recovered from appellant upon his arrest and several photographs taken of the scene, including depictions of the kitchen door's chain lock. Upon appellant's motion, the trial court dismissed count six on the basis the state had presented insufficient evidence of appellant's guilt of that offense with regard to Reed.
Appellant thereafter presented the testimony of Scales. Scales admitted he had not been present in the house in the early morning of December 26, 1998.
Ultimately, the jury returned a verdict of guilty on each of the remaining counts. The trial court subsequently sentenced appellant to terms of incarceration as follows: count one, seven years; count two, three years; count three, seven years; count four, eighteen months; and count five, two years. All of the terms except for the term on count four were ordered to be served consecutively.
Appellant has filed a timely appeal of his convictions and sentences. He presents five assignments of error that will be addressed in logical order and combined when appropriate.
Appellant's second and first assignments of error state:
 II. THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION OF GUILT OF BURGLARY IN VIOLATION OF OHIO REVISED CODE SECTION 2911.12, FELONIOUS ASSAULT IN VIOLATION OF OHIO REVISED CODE SECTION 2903.11, KIDNAPPING IN VIOLATION OF OHIO REVISED CODE SECTION 2905.01, GROSS SEXUAL IMPOSITION IN VIOLATION OF OHIO REVISED CODE SECTION 2907.05, AND INTIMIDATION IN VIOLATION OF OHIO REVISED CODE 2921.03 AGAINST THE APPELLANT.
 I. APPELLANT'S CONVICTIONS OF BURGLARY IN VIOLATION OF OHIO REVISED CODE SECTION 2911.12, FELONIOUS ASSAULT IN VIOLATION OF OHIO REVISED CODE SECTION 2903.11, KIDNAPPING IN VIOLATION OF OHIO REVISED CODE SECTION 2905.01, GROSS SEXUAL IMPOSITION IN VIOLATION OF OHIO REVISED CODE SECTION 2907.05, AND INTIMIDATION IN VIOLATION OF OHIO REVISED CODE 2921.03 ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant argues that none of his five convictions is either based upon sufficient evidence or sustained by the weight of the evidence. He therefore asserts that the trial court erred in over-ruling his motions for acquittal and that his convictions should be reversed. This court disagrees.
A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v. Dennis (1997), 79 Ohio St.3d 421; State v. Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978), 55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983), 20 Ohio App.3d 172.
With regard to an appellate court's function in reviewing the weight of the evidence, the supreme court has set forth the following as the relevant analysis:
 * * * Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. (Citation omitted.) * * *
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a thirteenth juror and disagrees with the factfinder's resolution of the conflicting testimony.
 Tibbs [v. Florida (1982)], 457 U.S. [31], at 42, 102 S.Ct. [2211] at 2218, 72 L.E.2d [652] at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.).
State v. Thomkins (1997), 78 Ohio St.3d 380 at 387. (Emphasis added.)
Thus, this court must be mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
In this case, the police officers testified one of the chain links on the kitchen door of Reed's apartment appeared to be freshly broken. Their testimony was corroborated by both Scott and Reed, neither of whom noticed any damage to the chain prior to the incident. It also was supported by photographs entered into evidence.
Reed testified she did not give appellant permission to enter her apartment; nevertheless, it was appellant inside whom Scott saw when she was awakened. According to Scott's testimony, appellant proceeded to confine her to the couch by placing himself between her legs. She testified he touched her thigh and made efforts to touch both her breasts and her vaginal area. When she resisted, he verbally threatened her and, while doing so, placed a knife close to her face.
Scott testified appellant's attempts to physically assault her were interrupted only by Reed's baby's cries. However, Scott further indicated she did not think the danger was ended until appellant departed Reed's apartment. Even thereafter, when appellant telephoned Scott from the police station to berate her for reporting the incident, one of the police officers who was observing her testified that Scott's fear of appellant was rekindled to the extent she again became hysterical.
From the evidence presented, therefore, reasonable minds could reach different conclusions as to whether each material element of the crimes with which appellant was charged was proven beyond a reasonable doubt. State v. Kimmie (July 2, 1998), Cuyahoga App. No. 72904, unreported; State v. Murphy (July 30, 1998), Cuyahoga App. No. 71775, unreported; State v. Gedson (July 9, 1998), Cuyahoga App. No. 73034, unreported; State v. Fischer (Nov. 24, 1999), Cuyahoga App. No. 75222, unreported.
Similarly, although appellant challenges the weight of the evidence against him, each separate assertion forming the basis for his challenge must be rejected.
Appellant first asserts that some of Reed's testimony regarding temporal matters renders it unreliable; however, a review of the transcript of appellant's trial reveals appellant's counsel deliberately asked Reed confusing questions on cross-examination. Despite these questions, Reed's testimony was corroborated by Scott, by the police officers, and even by Scales in its essentials.
Moreover, from the photographic evidence, the jury was able to draw its own conclusions concerning when and by what means damage to the chain on Reed's door was likely to have occurred.
Additionally, although appellant asserts the failure of the police officers to discover a robe in the downstairs unit weakens the weight of the evidence against him, this failure lacked significance in view of the following facts: (1) the officers were required to wait a lengthy period of time before they were permitted to gain entry; (2) the officers were required to obtain a search warrant before they could search either any closets or any places a robe could be hidden; and (3) the officers did not find such an effort necessary since appellant was both the only named suspect and the only other person present on the premises at the time the incident occurred.
Thus, a review of the entire record fails to support a conclusion the jury lost its way when it convicted appellant of the offenses with which he was charged. State v. Pitts (Apr. 9, 1998), Cuyahoga App. No. 72304, unreported; State v. Cox (Jan. 30, 1992), Cuyahoga App. No. 59704, unreported; State v. Wright (Aug. 6, 1998), Cuyahoga App. No. 72531, unreported; State v. Fischer, supra; State v. Williams (Oct. 7, 1999), Cuyahoga App. No. 74840, unreported.
Appellant's first and second assignments of error are over-ruled.
Appellant's fifth assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY TO INCLUDE ASSAULT AS A LESSER INCLUDED OFFENSE OF FELONIOUS ASSAULT AND UNLAWFUL RESTRAINT AS A LESSER INCLUDED OFFENSE OF KIDNAPPING.
A review of the record demonstrates appellant made no objections to the trial court's instructions to the jury; therefore, for purposes of appeal, appellant has waived this argument. Crim.R. 30(A); State v. Williams (1977), 51 Ohio St.2d 112.
Appellant's fifth assignment of error, accordingly, is over-ruled.
Appellant's third and fourth assignments of error state:
 III. THE TRIAL COURT ERRED IN SENTENCING WHEN IT FAILED TO DETERMINE THAT GROSS SEXUAL IMPOSITION AND KIDNAPPING WERE ALLIED OFFENSES OF SIMILAR IMPORT PURSUANT TO OHIO REVISED CODE SECTION 2941.25 THAT WOULD PRECLUDE APPELLANT'S CONVICTION OF BOTH OFFENSES.
 IV. APPELLANT'S SENTENCING FOR CONVICTIONS OF KIDNAPPING AND FELONIOUS ASSAULT CONSTITUTE ALLIED OFFENSES OF SIMILAR IMPORT, AND THUS, APPELLANT'S SENTENCING FOR BOTH OFFENSES CANNOT BE SUSTAINED.
Appellant argues the trial court acted improperly in failing to make determinations pursuant to R.C. 2941.25 prior to imposing sentence upon him. Appellant's argument is unpersuasive.
Appellant first asserts that he could not properly be convicted for both gross sexual imposition and kidnapping. Appellant cites State v. Jude (Feb. 18, 1994), Wood App. No. 92WD101, unreported, as support for his assertion.
However, in State v. Murphy, supra, this court expressly declined to follow the decision of the Sixth Ohio Appellate District, finding the Ohio Supreme Court's analysis as set forth in State v. Nicholas (1993), 66 Ohio St.3d 431, to be controlling law. This court finds additional support for its position on this matter in the supreme court's more recent analysis of R.C. 2941.25 as set forth in State v. Rance (1999), 85 Ohio St.3d 632. For these reasons, appellant's third assignment of error lacks merit.
Appellant further asserts that his convictions for both kidnapping and felonious assault were improper. In response, the state correctly observes in its appellate brief that appellant failed to lodge an objection to these two convictions on the basis of R.C. 2941.25 in the trial court. He has, therefore, waived this argument.[3] State v. Williams, supra.
Accordingly, appellant's third and fourth assignments of error are also overruled.
Appellant's convictions and sentences are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
ANN DYKE, A.J. and JAMES M. PORTER, J. CONCUR
KENNETH A. ROCCO, JUDGE
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] Count five pertained to Scott and count six to Reed.
[3] Even were this court to consider appellant's argument, since the elements of these offenses do not correspond to such a degree that commission of one crime will result in commission of the other, appellant's argument would be rejected. State v. Rance, supra; State v. Nicholas, supra.